## FOWLER v. CALIFORNIA TOLL–BRIDGE AUTHORITY.

### No. 21412.

District Court, N. D. California, Southern Division.

Aug. 14, 1941.

Judgment affirmed, 128 F.2d 549.

Thomas C. Ryan and Daniel V. Ryan, both of San Francisco, Cal., for plaintiff.

Leo A. Cunningham, of San Francisco, Cal., for defendant.

WELSH, District Judge.

The defendant, California Toll Bridge Authority, moves to dismiss this action for, among other stated grounds, want of jurisdiction in this court to hear and determine the controversy because the defendant is in reality the State of California. This action is one to recover damages for an alleged appropriation and unauthorized use by the defendant, in the construction of the San Francisco Bay Bridge, of plans and designs for such bridge prepared and owned by the plaintiff. No Federal question is presented by the allegations of plaintiff's complaint. The only ground on which the jurisdiction of this court is invoked is an alleged diversity of citizenship. If the defendant is in·

reality the State of California, then there is no diversity of citizenship, for a State is not a citizen. And, consequently, there can be no jurisdiction in this court. Postal Telegraph Cable Co. v. State of Alabama, 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L. Ed. 231.

█ And the court is not limited in its inquiry into the citizenship status of the parties, for the purpose of determining its jurisdiction, to an examination solely of the parties of record. If it appears that one of the parties is in reality, although not in name, a State, jurisdiction dependent upon a diversity of citizenship must fail.

"As to what is to be deemed a suit against a state, the early suggestion that the inhibition might be confined to those in which the state was a party to the record * * * has long since been abandoned, and it is now established that the question is to be determined not by the mere names of the titular parties, but by the essential nature and effect of the proceeding, as it appears from the entire record." In re State of New York et al., 256 U.S. 490, 41 S.Ct. 588, 590; 65 L.Ed. 1057.

█ Furthermore, the non-existence of a diversity of citizenship in such case is not cured by any consent on the part of the State to suit, or any voluntary submission to the jurisdiction of the court, or any waiver of immunity from suit. State Highway Commission of Wyoming v. Utah Construction Co., 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262.

█ We come now to a consideration of the question of whether the defendant in this case is in reality the State of California.

The California Toll Bridge Authority, hereafter referred to as "The Authority", was created by act of the California State Legislature as an instrumentality to aid the State of California in effectuating its declared policy of acquiring and owning all toll bridges situated on or along any part of the state's highways with the end in view of ultimately eliminating all toll charges. Statutes, 1929, p. 1489.

The Authority consists of a board of five members, all state officials, acting without compensation. The Authority, in conjunction with the Department of Public Works of the State, determines upon the necessity and desirability of acquiring or constructing any particular toll bridge or other toll highway crossing. If its determination is favorable to the acquisition or construction of any such toll bridge or toll crossing, the Authority is empowered to direct the Department of Public Works to proceed therewith for and in the name of the State of California, and to issue revenue bonds to finance the same. These bonds are issued in the name of the California Toll Bridge Authority and are secured wholly by lien upon the tolls and other revenue obtained from the operation of the particular toll bridge or crossing for the acquisition or construction of which the bonds are issued, and do not constitute obligations of the State. The bonds are signed by the Director of Public Works and countersigned by the Governor. The proceeds from the sale of bonds are paid into the State Treasury and credited to a fund designated the acquisition and construction fund, and used primarily for that purpose. Disbursements from this fund are made upon demand of the Department of Public Works upon warrants drawn by the State Controller. The Department of Public Works, acting for and in the name of the State of California, has charge of the designing, acquisition and construction of all such toll bridges and other toll highway crossings, and of such transportation facilities connected therewith as may be authorized by the Authority, and of the operation and maintenance of the same. All tolls or other revenue received from the operation of any toll bridge or toll highway crossing are collected by the Department of Public Works and paid into the State Treasury. These funds are disbursed primarily for purposes of bond redemption and interest payments upon warrants drawn by the State Controller at the request of the Treasurer, and for purposes of acquisition, construction, operation and maintenance of toll bridges and toll highway crossings upon demand of the Department of Public Works upon warrants drawn by the State Controller. Whenever proceedings in eminent domain are required to be taken in connection with the acquisition or construction of any toll bridge, toll highway crossing, or transportation facilities connected therewith, such proceedings are taken by the Department of Public Works, upon direction of the Authority, in the name of the State of California. The Authority is empowered to prescribe the terms and conditions upon which transportation service may be conducted over

any state owned toll bridge or highway crossing, and to grant permits therefor. The Authority, if it deems it to be to the best interest of the State, may enter into contract with transportation companies or with political subdivisions for the use of transportation facilities over any toll bridge or toll highway crossing. Or, if it deems it to be for the best interest of the State, the Authority may itself in behalf of the State operate the transportation facilities of any such toll bridge or crossing. The Authority is also empowered to fix the form, conditions and denominations of the revenue bonds it issues, and to enter into contracts and incur various obligations in connection with its authorized activities. And it may sue and be sued.

In all its functions, the Authority is representing and assisting the State in the performance of a traditional governmental function, that of building, operating and maintaining bridges and highway crossings as a part of the government system of state highways. The Authority is not a distinct and separate entity embarked upon a profit making commercial enterprise in competition with private citizens. The Authority owns no property. The bridges belong to the State. It has no capital stock. It derives no income to itself. All tolls and revenues received from the operation of the bridges are paid into the State Treasury and become state funds. The members of the Authority are all state officials none of whom receive any compensation for the services they perform as members of the Authority in addition to their regular salaries received for their services to the State. The Authority may make contracts and incur obligations, but it is not itself able to respond financially to any judgment which may be recovered against it. The holder of any such judgment would have to look to the State and to state funds for satisfaction thereof. The Authority does not act in any proprietary capacity. All of its acts are done for and on behalf of the State of California in the performance of a traditional governmental function. Finally, the Authority is in reality the State of California. And a suit against the Authority as an entity to recover a money demand is in reality a suit to recover against the State of California.

We are not without direct authority for our position. In the case of Kansas City Bridge Co. v. Alabama State Bridge Cor-

poration, 5 Cir., 59 F.2d 48, an action on contract was brought in the United States District Court against the Alabama State Bridge Corporation. Jurisdiction was based upon diversity of citizenship. Judgment rendered for the defendant upon demurrer was affirmed on appeal on the ground that the State of Alabama was the real party in interest. In this case it appeared that the organization, purpose, powers and functions of the defendant, Alabama State Bridge Corporation, was in all substantial details the same as the California Toll Bridge Authority. On page 49 of 59 F.2d, the court in holding that a suit against the Alabama State Bridge Corporation was a suit against the State of Alabama, said:

"It is clear that the whole purpose of the act was to erect bridges essential to the highway system, to pay for them with tolls, and then to make them free for the use of the public. It is well settled that the construction of public roads and bridges is a governmental function. * * * The state may either perform this function in its own name or through its public officers or one of its governmental agencies. * * * The Alabama Bridge Corporation was but an agency or instrumentality through which the state acted in causing its public bridges to be constructed. It was not a private corporation in any sense of the word, but state officials, who might as well have been designated a board or commission, were ex officio members, and the only members, of it. * * * In the nature of things the state had to choose some such agency in order to effectuate its purpose. * * * We are of the opinion, therefore, that this is a suit against the state of Alabama."

In the case of State Highway Commission in Arkansas v. Kansas City Bridge Company, 8 Cir., 81 F.2d 689, it was held that a suit against the Arkansas State Highway Commission was in reality a suit against the State of Arkansas and consequently could not be instituted in the Federal Court on the ground of a diversity of citizenship. On page 690 of 81 F.2d, the court stated:

"That under the laws of Arkansas the commission is a state agency performing governmental functions with respect to the construction and maintenance of state highways and state highway bridges is not disputed. That it was acting as such agency in entering into the contract which is the

basis of this suit is likewise undisputed. The revenues available for meeting obligations incurred by that commission were state revenues. * * * The legal effect of the contract would be the same whether it stated that it was made by the state through the commission or by the commission itself. In either event, it would be a contract made and executed by an agency of the state on behalf of the state. Moreover, the purpose of this suit was to require the state to make pecuniary satisfaction for a liability which, it has been held, would make the suit one against the state."

In the instant case, we hold that the defendant is in reality the State of California. Since there is no diversity of citizenship, there is no jurisdiction in this court. The provision of law authorizing the defendant to sue and be sued cannot supply the jurisdictional prerequisite of diversity of citizenship which is lacking here. State Highway Commission of Wyoming v. Utah Construction Co., 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262.

It is therefore ordered, that the motion of the defendant to dismiss this action be and the same is hereby granted.